UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KYLE D. KENNARD,

Plaintiff,
v.

Case No. 11-15079-BC
Honorable Thomas L. Ludington

MEANS INDUSTRIES, INC.,

Defendants.
______________________________/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND TO LIMIT PLAINTIFF TO THE ADMINISTRATIVE RECORD AND CANCELING HEARING**

Plaintiff Kyle Kennard has filed a complaint asserting, in relevant part, an ERISA denial-of-benefits claim. Plaintiff suffered a severe injury to his lungs in the course of his employment in 1990. As a result of an Independent Medical Exam ("IME") set up by the employer, Mr. Kennard was given "life-long" restrictions to work in a clean air environment. In 1992, Defendant attempted to set up a clean-air environment job for the Plaintiff. In 1996, Defendant Means Industries ("Means" or "Defendant") sent Plaintiff for another IME to Dr. Kopmeyer who confirmed that Plaintiff needed a clean air environment.

There was a series of events that occurred that resulted in the Plaintiff filing an Americans with Disabilities Act Claim, Workers' Compensation Petitions and retaliation claims against Defendant. These actions in or around 2000, were resolved with a payment of $24,000.00 and certain guarantees regarding restrictions, accommodations, and the reinstatement of workers compensation benefits under certain circumstances. Moreover, it was agreed that Plaintiff's restrictions were "permanent".

In 2005 there was a change in management for the Defendant. Bruce Gluski replaced Joe

Diederian as the head of human resources. Soon thereafter, Plaintiff alleges that Gluski required him to do things that were not consistent with his "clean-air" environment restrictions, as well as tasks that he had not been required to do under the direction of Diederian.

In 2006, Plaintiff had increasing difficulties with wind driven pollutants from a neighboring plant. Subsequently, Plaintiff alleges there were a number of events that occurred where Defendant did not satisfy the requirements of its prior agreements with Plaintiff. As a result the Plaintiff filed the last of his workers compensation petitions that was ultimately redeemed on May 2, 2007 for $220,000.00, representing nearly ten years of benefits. Plaintiff was then approved for Social Security Disability ("SSD") benefits, with the Social Security Administration concluding that Plaintiff was totally disabled as of February 14, 2006. It is Plaintiff's believe that Defendant had always awarded a disability pension under the company-sponsored ERISA Plan once an employee was approved for SSD. Plaintiff contends he was informed that in early 2009, two of Defendant's employees were awarded disability pensions after demonstrating that they were approved for SSD.

Plaintiff then contacted Joyce Hynes at the Defendant's Corporate Headquarters. Hynes allegedly confirmed that approval of SSD entitled Plaintiff to a disability pension. While Plaintiff was speaking with Hynes, Gluski allegedly heard the conversation and yelled out "we are not paying you again." Hynes had advised Plaintiff that he would be approved within thirty days. However, when Plaintiff did not hear from her he repeatedly attempted to call her. She would not answer nor respond to his phone calls. Plaintiff was then advised that he was scheduled for two additional IMEs. Counsel for Plaintiff wrote a letter, approximately one week later, requesting clarification as to how the IMEs were scheduled in light of the fact that there was no union committee who could have consented to the doctors per the contract. No clarification was given.

On February 26, 2010, Plaintiff received a denial of benefits letter from Shemanski explaining that Plaintiff was not permanently disabled within the meaning of the Plan. The letter noted Dr. Levinson's conclusion that Plaintiff was employable so long as he could be guaranteed that he would be placed in an absolute clean air environment . Dr. Levinson did not, however, provide an opinion as to whether such an environment was possible or whether one existed at Defendant's facility. The letter did not provide notice of any appeal process to allow Plaintiff to augment or supplement his file with the medical evidence that he had accumulated over approximately twenty years that he believed supported his claim for disability pension benefits.

Defendant subsequently filed the instant motion, requesting that the Court enter a protective order to strike Plaintiff's interrogatories, request for production of documents, and requests for admissions served on or about May 17, 2012 concerning his ERISA claim and to limit Plaintiff to the administrative record and not permit discovery on this ERISA claim pursuant to *Wilkins v. Baptist Healthcare System*, 150 F.3d 609 (6th Cir. 1998). ECF No. 7. Plaintiff also asserts a state law claim alleging that Defendants intentionally discriminated/retaliated against him in violation of the Michigan Workers Disability Compensation Act, Mich. Comp. Laws § 418.101 et seq., because of his prior workers' compensation claims when Defendant denied Plaintiff's request for disability pension benefits. Discovery concerning Plaintiff's Workers Disability Compensation Act retaliation claim is not subject to Defendant's motion.

Defendant argues that Plaintiff's ERISA claim-related discovery requests attempt to circumvent the *Wilkins* judicial review process. For this reason Defendant explains that it served objections to Plaintiff's interrogatories, document requests and requests for admissions which sought discovery involving Plaintiff's ERISA claim. ECF No. 7 Ex. A. Defendant did, however, answer

Plaintiff's discovery requests to the extent Plaintiff sought information that could arguably involve Plaintiff's workers' disability compensation act retaliation claim. *Id.*

Defendant characterizes the central dispute in Plaintiff's ERISA case as whether, under the arbitrary and capricious standard, there was a reasonable basis for the decision to deny Plaintiff's request for disability pension benefits under the provisions of Means Industries, Inc. Vassar Division Paper, Allied-Industrial, Chemical and Energy Workers International Union, AFL-CIO, CLC, Local 6-358, Hourly Employees Retirement Plan, which Plaintiff alleges that Defendant improperly denied. Generally, denial of benefits ERISA actions are constrained to the contents of the administrative record and the parties' arguments regarding how the record should be interpreted. *Andren v. The Hartford*, No. 07-12559, 2008 U.S. Dist. LEXIS 40018, at *2 (E.D. Mich. May 12, 2008). There are, however, limited circumstances under which discovery may be sought where evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process or procedural irregularity afforded by the administrator or any alleged bias on its part. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). Importantly, mere allegations of bias or procedural irregularity without providing any facts to support a claim that discovery might lead to evidence of bias are not sufficient to permit discovery under *Wilkins'* exception. *Putney v. Medical Mutual of Ohio*, 111 F. App'x 803, 806-07 (6th Cir. 2004). Such "mere allegations" include generalized claims of financial conflict of interest on the part of the defendant and the independent physician consultants who review the plaintiff's file. *See Huffaker v. Metro. Life Ins. Co.*, 271 F. App'x 493, 504 (6th Cir. 2008). The Sixth Circuit has instructed that a plaintiff seeking discovery in an ERISA benefits case must make some sort of "predicate showing" of "an alleged procedural violation" as a condition of obtaining discovery,

presumably to avoid allowing discovery as a matter of routine, in the interest of advancing the goal of inexpensive and expeditious dispositions. *Huffaker v. Metro. Life Ins.*, 271 F. App'x 493, 504 (6th Cir. 2008); *see also Likas v. Life Ins. Co. of N. Am.*, 222 F. App'x 481, 486 (6th Cir. 2007); *Putney v. Med. Mut. of Ohio*, 111 F. App'x 803, 807 (6th Cir. 2004). Any prehearing discovery should be limited to such procedural challenges. *Wilkins*, 150 F.3d at 619.

Defendant requests that the Court enter an order striking Plaintiff's discovery as it relates to Plaintiff's ERISA claim; limit the parties to the administrative record on Plaintiff's ERISA claim in conformance with *Wilkins*; and deny any request for discovery of information not presently in the administrative record because Plaintiff has not identified the procedural defect nor has he provided a factual basis for believing that discovery will yield information that is materially relevant. Defendant also requests that this Court enter a modified ERISA Scheduling Order as it relates to Plaintiff's ERISA claim.

Plaintiff first responds that the discovery requests are relevant to his Worker's Compensation Act claim and that a broad scope of discovery is permitted in such instances. Therefore, any evidence that has any tendency to make the existence of any fact consistent with the Plaintiff's claim that his disability pension was a motive or factor in the decision making process is "relevant." Federal Rule of Evidence 401. Moreover, in the discovery process a party is allowed to obtain any evidence, even if not admissible, to the extent if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence. Federal Rule of Civil Procedure 26(b)(1). Plaintiff believes that there is direct evidence that he was discriminated against when he was told that Defendant would not be paying him any additional money and therefore he was not going to be given a disability pension despite the fact that, under the same circumstances, other individuals had

received the benefits.

Plaintiff also argues that he is pursuing a procedural challenge. In his response, Plaintiff claims the following alleged procedural defects: (1) a conflict of interest to the extent that Bruce Gluski, a former human resources direct for Defendant Means, was a person who made or influenced the decisions to send the Plaintiff for more IMEs and turn him down for his disability pension; (2) that the selection of the physicians was not consistent with the Plan; (3) that the Plaintiff was never apprised of any change in the Plan; (4) that despite requests by Plaintiff's counsel no clarification was ever provided; (5) that Plaintiff was never provided any appeal procedure nor was he given information as to how he could supplement his medical file for review; and (6) there was never any evidence to suggest that there was an "Absolute Clean Air Environment" in Plaintiff's workplace, and that his condition required a clean-air environment.

Importantly, Plaintiff alleges that Gluski had substantial animus against the Plaintiff because he had a work related injury, had filed petitions and had other workers compensation claims. Plaintiff has alleged direct evidence exists that Gluski stated that, in light of the $220,000 Plaintiff had been paid, Defendant would not pay him again despite the fact that other similarly situated employees were approved for their pension once they provided evidence of approval for Social Security Disability. Plaintiff cites a number of cases from other district courts that have provided for discovery in similar situations where procedural defects have been alleged but a threshold showing of an alleged procedural violation had not been made. *See* ECF No. 9 at 24-27. Plaintiff urges the Court to follow the conclusions of these cases in lieu of requiring a predicate showing" of "an alleged procedural violation" as a condition of obtaining discovery as provided for in the previously-cited unpublished cases from the Sixth Circuit.

In reply, Defendant emphasizes that the dispositive issue regarding Plaintiff's Worker's Compensation Act claim is whether he can prove the requisite causal connection between his protected activity—the filing of a worker's compensation claim—and the denial of his pension benefits 2 years and 9 months after Plaintiff and Means entered into a workers' compensation settlement in May 2007. Thus, the issues on which he seeks discovery would not lead to evidence to support his claim on the issue Defendant intends to challenge.

Defendant also argues that none of the alleged procedural defects are sufficient to permit discovery as none are factual. Plaintiff's first claim of bias fails for two reasons. First, it was Hynes, at the direction of Ed Shemanski, the Plan Administrator, who was responsible for sending Plaintiff to IMEs with Drs. Holda and Levinson in December 2009. ECF No. 10 Ex. B Bates 367, 369-70. Second, Gluski was not employed at Means when Shemanski made his decision to deny Plaintiff's request for disability pension benefits. *Id.* Bates 350-351. Defendant asserts that Plaintiff's second claim of bias also fails as the selection of Drs. Holda and Levinson to review whether Plaintiff qualified for disability retirement benefits was consistent with the Summary Plan Description ("SPD"). More specifically, the SPD which Defendant provided to Plaintiff as part of the Administrative Record in this case states in pertinent part:

> To qualify for this benefit, a physician selected by the Plan Administrator must determine that your disability totally and permanently prevents you from engaging in any occupation or employment.

*Id.* at Bates 278, 282.

Defendant submits that the above-referenced SPD language, as well as language concerning appeal rights, was contained in the SPD at all relevant times, and Plaintiff's third and fourth claims of alleged procedural defects are thus also without merit. *Id.* at Bates 286- 87. Plaintiff's fifth alleged

procedural defect concerning his alleged inability to supplement his medical file fails since his disability determination was based on his 2009 examination. Finally, Defendant argues that Plaintiff's sixth alleged procedural defect about no absolute clear air environment in 2009 fails because Plaintiff was no longer an employee after May 2, 2007.

Defendant also contends that Plaintiff's reliance on *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008) is misplaced. *See, e.g., Dubois v. UNUM Life Insurance Co. of America*, 2008 U.S. Dist. LEXIS 53970 (D. Me. 2008) ("*Glenn* was not a case about discovery and does not suggest that discovery automatically should be permitted if such a conflict [of interest, i.e. the administrator is also the funder of the claims] exists."). In this case, Defendant emphasizes that Plaintiff has not alleged any such conflict of interest. According to Defendant, Plaintiff's reliance on *Myers v. The Prudential Insurance Co., of America*, 581 F. Supp. 2d 904 (E.D. Tenn. 2008) and *Kinsler v. Lincoln National Life Ins.*, Co., 660 F. Supp. 2d 830 (M.D. Tenn 2009) to support his claim that a plaintiff is not required to make a predicate threshold showing of bias in order to be permitted discovery in ERISA benefits litigation is similarly misplaced. First, Defendant notes that *Myers* and *Kinsler*, from the Eastern and Middle Districts of Tennessee, are not controlling in this Court. More importantly, Defendant asserts that *Myers* and *Kinsler* stand in contradiction to the Sixth Circuit's opinions in *Likas, Putney*, and *Huffaker*, which, although unpublished, require a predicate threshold showing of bias before permitting discovery.

Although unpublished, this Court finds the reasoning in *Likas, Putney*, and *Huffaker* persuasive and, although Plaintiff notes the Court is not bound by these decisions, it is likewise not bound by the district court authority Plaintiff advances. Plaintiff's general allegations of procedural defects, without any factual support, are insufficient to establish the necessary predicate showing

of an alleged procedural violation by Defendant in order to provide discovery on his ERISA claim.

To the extent that Plaintiff believes Defendant is required to provide responses to his discovery requests that pertain to his Worker's Compensation Act claim but has refused to do so, Plaintiff must seek to compel the responses and cannot request this relief in a response brief. Additionally, because Plaintiff believes a number of the objected-to requests are relevant to his Worker's Compensation Act claim, it is premature to strike the discovery requests in the context of the instant motion. Plaintiff will, however, be limited to the administrative record as provided under *Wilkins* and will be denied leave to conduct any additional discovery regarding his ERISA claim.

Accordingly, it is **ORDERED** that Defendants' motion for protective order to strike Plaintiff's discovery and to limit Plaintiff to the administrative record (ECF No. 7) is **GRANTED IN PART AND DENIED IN PART.** A modified ERISA scheduling order is forthcoming.

It is further **ORDERED** that the hearing scheduled for August 15, 2012 is **CANCELED** because oral argument will not aid in the disposition of the motion. E.D. Mich. L.R. 7.1(f)(2).

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: August 3, 2012

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 3, 2012.

s/Tracy A. Jacobs
TRACY A. JACOBS