UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KYLE D. KENNARD,

       Plaintiff,                              Case No. 11-15079
                                                          Honorable Thomas L. Ludington

v.

MEANS INDUSTRIES, INC. et al.

       Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, DENYING PLAINTIFF'S MOTION TO COMPEL, AND OVERRULING PLAINTIFF'S STATEMENT OF PROCEDURAL CHALLENGE**

In 1999 and again in 2006, Plaintiff Kyle Kennard filed workers' compensation petitions against his former employer, Defendant Means Industries, Inc., seeking compensation for work-related injuries. He recovered a total of $244,000.

But when Defendant denied Plaintiff's request for long-term disability benefits in 2009, he did not seek a workers' compensation remedy. Instead he filed this lawsuit. Plaintiff alleges that Defendant denied his application for disability retirement benefits in violation of the Employee Retirement Income Security Act (ERISA). Further, Plaintiff claims Defendant's actions constitute illegal discrimination under the Workers' Disability Compensation Act (WDCA) because Defendant was retaliating against Plaintiff for filing his workers' compensation petitions. Currently before the Court are Plaintiff's statement of procedural challenges to the ERISA Plan Administrator's decision and Defendant's motion to dismiss Plaintiff's WDCA claim pursuant to Fed. R. Civ. P. 12(b)(6). Based on the following, Defendant's motion to dismiss will be granted, and Plaintiff's statement of procedural challenges will be overruled.

**I**

Plaintiff was employed by Defendant for many years, and in 1990 he suffered a severe injury to his lungs when he was exposed to a chemical spill. Rendered ultra-sensitive to airborne pollutants, Plaintiff received a life-long restriction to work in a clean-air environment. Defendant provided a clean-air environment in March 1992, and Plaintiff returned to work. Plaintiff claims, however, that over the next eight years Defendant's other employees received several increases in pay and cost of living adjustments, but that he did not. So in 1999, Plaintiff filed a Michigan Workers' Compensation Act claim to enforce his rights. In March of 2000, an agreement was reached to resolve Plaintiff's claims: he was paid $24,000 and given certain guarantees, including restrictions and accommodations, to account for his lung injury.

In 2005, Defendant hired a new HR manager, Bruce Gluski. Mr. Gluski required Plaintiff to punch in and out on a time clock in Defendant's plant, which was not located in a clean air environment. Due to this exposure, Plaintiff claims he became increasingly ill and was forced to miss work. Eventually Plaintiff was laid-off during a reduction in force. He alleges that Defendant then refused to pay workers' disability compensation benefits. In 2006, Plaintiff filed a second workers' compensation petition. This time, Defendant paid Plaintiff $220,000 — representing nearly ten years' worth of benefits.

On May 29, 2007, Plaintiff sought Social Security Disability (SSD) benefits, alleging that he was disabled as of February 14, 2006. After a hearing before the Honorable Joanne E. Adamczyk, Plaintiff was found to be totally disabled in a decision dated October 6, 2009. Based on this SSD finding, Plaintiff applied for disability retirement benefits under Defendant's employee benefit plan (Plan), which is governed by ERISA.[1] He first requested the paperwork to begin the process, and Defendant sent him the appropriate forms on October 19, 2009. The

---

[1] Neither party disputes the fact that Defendant's employee benefit plan is governed by ERISA.

next day, Plaintiff submitted the completed forms, and initiated his request for disability retirement benefits under Defendant's Plan.

Section 2.3 of the Plan provides that an employee "who shall have become, through some unavoidable cause, permanently disabled and who at such time shall be an Eligible Employee shall be eligible for a disability benefit."  Def.'s Resp. Ex. A, at 299, ECF No. 38.  Section 2.3 then defines "permanent" disability under the Plan:

> A Participant shall be considered to be permanently disabled (as "permanently disabled" is used herein) only:
> (a) If he has been totally disabled by bodily injury or disease so as to be prevented thereby from engaging in any occupation or employment for remuneration or profit, and which condition constitutes total disability under the federal Social Security Act; and
> (b) After such total disability shall have continued for a period of six consecutive months and, in the opinion of a qualified physician chosen by the Committee (subject to Section 11), it will be permanent and continuous during the remainder of his life.

*Id*.  According to the Plan's summary description, to qualify for disability retirement, "a physician selected by the Plan Administrator must determine that [the] disability totally and permanently prevents [an employee] from engaging in any occupation or employment."  Def.'s Reply Ex. B, at 5, ECF No. 10.

One month after Plaintiff submitted his long-term disability request form, on November 17, 2009, examinations were scheduled with two doctors to review his disability.  *See* Def.'s Resp. Ex. A, at 367.  The appointments were with Dr. Gerald Levinson, D.O. on December 3, 2009, and Dr. Michael Holda, J.D. on December 10, 2009.  Plaintiff was encouraged to "have any medical records with tests, etc." sent to the doctors before the appointments.  *Id*.

Plaintiff was examined by Dr. Levinson on December 3 in Southfield, Michigan. Following the examination, Dr. Levinson authored a report in which he concluded:

> [Plaintiff] is permanently and totally medically disabled from his usual and customary employment at Means Industries on the basis of occupational asthma as described above. However, he is employable as long as he could be guaranteed that he would be placed in an absolute clean air environment with absolutely no noxious fumes or inhalants, as he is sensitive to this. If that criteria could be met, then he could be employable in a clerical position.

*Id*. at 366. Plaintiff was then examined by Dr. Holda one week later in Flint, Michigan. After that examination, Dr. Holda authored his report. He recommended that Plaintiff "be restricted from repetitive bending and twisting at the waist and lifting over 25 pounds" with "no prolonged sitting, standing." *Id*. at 359. Dr. Holda did not conclude that Plaintiff was permanently disabled from work.

On the basis of Dr. Levinson's and Dr. Holda's medical examinations and reports, and in accordance with Plan terms, Defendant's Plan Administrator, Edward Shemanski, determined that Plaintiff was not permanently disabled within the meaning of the Plan. *See id.* at 350. On February 26, 2010, Mr. Shemanski sent Plaintiff a letter indicating that his "disability pension request" had been denied. *Id*.

On September 22, 2011, Plaintiff filed this case in the Saginaw County Circuit Court, claiming that Defendant denied his benefits claim in violation of both ERISA and the WDCA. In that way the case is unusual: combining an ERISA action with a state-law claim of discrimination. On November 17, 2011, Defendant removed the action to this Court. Currently pending are Plaintiff's procedural challenge to the Plan Administrator's ERISA decision and Defendant's motion to dismiss Plaintiff's state-law claim under Fed. R. Civ. P. 12(b)(6) due to ERISA preemption.

## II

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement showing that the pleader is entitled to relief." This standard does not require "detailed

factual allegations," but it demands more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id*.

To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks omitted). A claim is plausible when the plaintiff pleads factual content sufficient to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in the light most favorable to the plaintiff, and accept all factual allegations as true. *Twombly*, 550 U.S. at 570.

### III

In his complaint, Plaintiff alleges two causes of action: first, that Defendant violated ERISA by erroneously denying his application for disability retirement benefits under the Plan. Second, Plaintiff claims that those benefits were denied in retaliation for his prior workers' compensation petitions, and that Defendant's actions constitute illegal discrimination under the WDCA. Defendant's motion to dismiss relates to the latter claim, while Plaintiff's procedural challenge necessarily relates to the former. Each will be addressed in turn.

### A

Defendant moves to dismiss Plaintiff's state-law WDCA claim pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the claim is preempted by ERISA. Defendant is correct, Plaintiff agrees, and Plaintiff's state-law claim will be dismissed.

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). Notably, when enacting ERISA, Congress expressly preempted state-law claims that have any consequential relationship to ERISA plans. ERISA provides, "the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Supreme Court has interpreted this to indicate that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Davila*, 542 U.S. at 209. *See also Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991) ("ERISA preempts state law and state law claims that 'relate to' any employee benefit plan.") (quoting 29 U.S.C. § 1144(a)). In *Cromwell*, the Sixth Circuit went so far as to establish that "virtually all state law claims relating to an employee benefit plan are preempted by ERISA. It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." 944 F.2d at 1276 (citations omitted).

Plaintiff's WDCA claim is inextricably linked to the ERISA plan at issue here; in fact, the claim arises solely from the denial of long-term disability benefits under that plan. Because Plaintiff's WDCA claim is essentially "a claim . . . for the recovery of an ERISA plan benefit," *id*, it is preempted by ERISA. As described by the Supreme Court in *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990), state laws are preempted where, as here, "there simply is *no* cause of action if there is no plan." *Id.* at 140 (emphasis in original).

Suffice it to say, Plaintiff is in agreement. In his response to Defendant's motion to dismiss, Plaintiff takes the issue out of contention: "After a thorough review of the Defendant's

brief . . . Plaintiff believes that his state law claim for wrongful retaliation under the Michigan Workers Disability Compensation Act is preempted." Pl.'s Resp. 1, ECF No. 45. Accordingly, Plaintiff's state-law WDCA claim will be dismissed.

**B**

Despite Plaintiff's agreement as to the resolution of his state-law cause of action, he maintains that this case is otherwise unchanged. *Id*. at 2. Specifically, Plaintiff asserts a "litany of procedural irregularities . . . affected how the disability pension plan in this case was implemented and interpreted as it related to the Plaintiff." *Id*. This raises the second issue before the Court — Plaintiff's procedural challenge regarding his ERISA claim.

Plaintiff believes the Court should permit him to break the bounds of the administrative record to conduct discovery. This request has been made twice before, and both times it was denied. Because Plaintiff has not demonstrated the requisite procedural defects for such latitude, his challenge will be overruled, and he will be bound to the administrative record concerning his ERISA claim.

As a general matter, when reviewing an ERISA denial-of-benefits claim, a "district court must take a 'fresh look' at the administrative record but may not consider new evidence or look beyond the record that was before the plan administrator." *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 616 (6th Cir. 1998); *Putney v. Medical Mutual of Ohio*, 111 F. App'x 803, 806 (6th Cir. 2004) (unpublished table decision). There is a narrow exception, however, if additional evidence is necessary to resolve a claimant's procedural challenge to the administrator's decision to deny benefits. *Wilkins*, 150 F.3d at 619 (Gilman, J. concurring and joined by Ryan, J.). Procedural challenges include "an alleged lack of due process afforded by the administrator or alleged bias on its part." *Id*.

In *Putney*, the court established that mere allegations of bias are "not sufficient to permit discovery under *Wilkins*' exception." 111 F. App'x at 807. *See also Likas v. Life Insurance Co. of North America*, 222 F. App'x 481, 486 (6th Cir. 2007) (unpublished table opinion) ("mere allegation of bias is insufficient to 'throw open the doors of discovery' in an ERISA case.") (citation omitted); *Huffaker v. Metropolitan Life Ins. Co.*, 271 F. App'x 493, 504 (6th Cir. 2008) (unpublished table opinion) ("A claimant cannot obtain discovery beyond the administrative record — even if limited to a procedural challenge — merely by alleging a procedural violation.").

Plaintiff argues the following three defects support his procedural challenge: (1) each employee before him to provide documentation of approval for SSD benefits received disability pension benefits; (2) the conflict of interest between Gluski/Defendant and Plaintiff was the central reason Plaintiff was denied a disability pension; and (3) selection of Drs. Levinson and Holda was not consistent with the Plan, and the doctors were not provided with the necessary medical records to perform proper evaluations. Ultimately, none of these allegations warrant discovery outside the administrative record. *See Huffaker*, 271 F. App'x at 504.

1

In support of Plaintiff's first alleged procedural challenge, he claims that "each person who was found disabled by the Social Security Administration was awarded a disability pension [by Defendant]." Pl.'s Procedural Challenge 5. Plaintiff explains that Joyce Hynes, Defendant's Senior Salaried Personnel Administrator, "confirmed this truism." *Id*.

Ms. Hynes, on the other hand, maintains that "Plaintiff is wrong." Def.'s Resp. Ex. C, at ¶ 13. She claims she never told Plaintiff "that his approval for SSD automatically entitled him to receive [Defendant's] disability retirement pension benefits," *id*. at ¶ 14, and further explains:

> For as long as I can remember, it is my understanding that an individual's receipt of SSD benefits is only one step of the disability retirement pension eligibility process. I also understand that an individual must also undergo an IME with a qualified physician and that physician must find that the individual's disability will be permanent and continuous during the remainder of his/her life. This requirement is clearly spelled out in the plan.

*Id*. at ¶ 13.

Aside from his claim that Ms. Hynes told him so, Plaintiff offers no factual support that Defendant's employees who qualified for SSD benefits automatically received disability pension benefits.[2] Both Ms. Hynes and the language of the Plan itself contradict this claim. As Plaintiff offers no more than "mere allegations," his challenge on this point is overruled.

### 2

Plaintiff next argues that Mr. Gluski was involved with the denial of his disability pension claim, and Mr. Gluski's bias foreclosed a fair shake. According to Plaintiff, "[i]t was Gluski who stepped in and altered the perfunctory course of disability pension approval that Joyce Hynes confirmed, and intervened requiring two medical evaluations." Pl.'s Procedural Challenge 6. Plaintiff continues:

> The procedural change that caused the Plaintiff's denial was the failure to adhere to the past practice and approve the disability pension based on Social Security Disability approval. Therefore, Gluski intervening and selecting physicians to review the scant medical provided by [Defendant] was a proximate cause of [Plaintiff] being denied his disability pension.

*Id*. Plaintiff offers nothing aside from these allegations to demonstrate that his denial of benefits was in any way related to Mr. Gluski.

---

[2] Moreover, the Sixth Circuit has established that an ERISA plan administrator "is not bound by an SSA disability determination." *Whitaker v. Hartford Life & Acc. Ins. Co.*, 404 F.3d 947, 949 (6th Cir. 2005) (citing *Hurse v. Hartford Life & Acc. Ins. Co.*, 77 F. App'x 310 (6th Cir. 2003) (unpublished table opinion)). In forming this conclusion, the court recognized that "entitlement to Social Security benefits is measured by a uniform set of federal criteria. But a claim for benefits under an ERISA plan often turns on the interpretation of plan terms that differ from SSA criteria." *Whitaker*, 404 F.3d at 949.

As noted above, Ms. Hynes denies that it was ever Defendant's practice to approve disability pensions based solely on SSD approval. The language of the Plan supports this contention. Section 2.3 provides that a participant is considered permanently disabled only if totally disabled "from engaging in any occupation or employment," and such disability will be, "in the opinion of a qualified physician . . . permanent and continuous." Def.'s Resp. Ex. A, at 299. Plaintiff has offered no evidence to indicate it was Mr. Gluski, hired by Defendant in 2005, that necessitated these changes. In fact, it is apparent this procedure was in effect long before Mr. Gluski arrived.

Plaintiff also argues it was Mr. Gluski who selected the two doctors to conduct the medical evaluations, and provided only "scant" medical records for their review. Pl.'s Procedural Challenge 6. This claim similarly folds under pressure.

Mr. Gluski had no hand in deciding which doctors would examine Plaintiff. Both Ms. Joyce and Mr. Shemanski, the Plan Administrator, established the following: "When any [Defendant Means] employee seeks disability retirement pension benefits, [Defendant Means] contacts Consulting Physicians, a Professional Corporation, at (800) 231-5200 and verbally informs Consulting Physicians about the employee's allegedly disabling condition(s). Consulting Physicians then schedules all of the independent medical examinations." Def.'s Resp. Ex. B, at ¶ 11; Ex. C, at ¶ 11. Plaintiff advances no evidence that it was instead Mr. Gluski who selected Drs. Levinson and Holda for Plaintiff's review. Again, with nothing more than "mere allegations," Plaintiff's procedural challenge on this ground will be overruled.

**3**

Finally, Plaintiff claims that Defendant did not select doctors "pursuant to the Plan as was provided to the Plaintiff," Pl.'s Procedural Challenge 7, and then failed to provide all the

necessary medical information to the physicians once selected. These challenges will also be overruled.

As an initial matter, Plaintiff refers to a plan that was not in effect at the time of his disability benefits request. The plan that controls here is the 2002 amended Means Vassar Division Paper, Allied-Industrial, Chemical and Energy Workers International Union, AFL-CIO, CLC, Local 6-358, Hourly Employees Retirement Plan (Def.'s Resp. Ex. A, at 289). Drs. Levinson and Holda were selected to examine Plaintiff pursuant to Section 2.3 of that Plan. Plaintiff's argument that their selection did not comport with the plan he was in possession of is irrelevant.

Plaintiff also argues that Defendant, "despite recently having been in voluminous depositions with the Plaintiff, and [sic] where the Defendant was given substantial medical documentation that supported the Plaintiff's claim of total disability, the Defendant failed to provide that medical documentation to the IME, Dr. Gerald Levinson." Pl.'s Procedural Challenge 7.

But this claim fails as well, for Plaintiff had every opportunity to supply the necessary medical records for the Doctors' review. In fact, it was his responsibility, and he was expressly encouraged to do so. Ms. Hynes wrote to Plaintiff, informed him of his upcoming appointments, and made clear: "If you could have any medical records with tests, etc., sent to [the Doctors] prior to your appointment it would be helpful." Def.'s Resp. Ex. A, at 367. This makes sense, of course, as employees are better equipped to provide medical records than an employer would be.

Plaintiff's belief that Defendant ignored "an almost two (2) decade history of life threatening occupational asthma" and that the doctors were "not provided any medical evidence of substance" emphasizes his failure to provide that documentation to the physicians, not any

bias on Defendant's part. Defendant did not prevent Plaintiff from providing medical documentation for the doctors' review. He was urged to do so, but simply chose not to. Again, Plaintiff has not demonstrated bias or an obstacle to due-process beyond mere allegations. As such, his procedural challenge on this ground will also be overruled.

Because Plaintiff's statement of procedural challenges is based on nothing more than general allegations, without factual support, it is insufficient to demonstrate a procedural violation entitling Plaintiff to discovery outside the administrative record. His challenge will therefore be overruled.

### C

There is one additional issue that needs to be addressed. Plaintiff filed a motion, on October 31, 2012, to compel answers to admissions, resolve ambiguities regarding future depositions, and to extend discovery in this case. In short, Defendant refused to answer "questions in depositions that pertained to the Plaintiff's claims regarding his workers compensation matter if the inquiries also involved delving into procedures governing the Plaintiff's pension and, arguably governed by [ERISA]." Pl.'s Mot. Compel 2, ECF No. 39. Plaintiff argued that the worker's compensation discovery issue "should be looked at as if there was not [sic] ERISA claim." *Id*. In his motion, Plaintiff asks for an order compelling answers to his requests for admissions, and order compelling witnesses to answer any and all questions "irrespective of any claims or defenses under ERISA," *id*. at 8, and thirty days to take additional depositions.

The motion was referred to Magistrate Judge Binder. Seeing that this was simply another attempt to extend discovery beyond the administrative record, Magistrate Judge Binder told Plaintiff that if this Court ruled he had "a viable workers Compensation Retaliation claim [he]

may renew . . . [his] request to admit." Pl.'s Mot. Compel. 6.  Because Plaintiff's worker's compensation claim is dismissed, however, his motion to compel will be dismissed as moot.

## IV

Accordingly, it is **ORDERED** that Defendant's Motion to Dismiss, ECF No. 42, is **GRANTED**.

It is further **ORDERED** that Plaintiff's Statement of Procedural Challenges, ECF No. 23, is **OVERRULED**.  Going forward, this case will be bound by the ERISA Plan Administrator's record, and discovery outside that record is **DENIED**.

It is further **ORDERED** that the Court's Order referring Plaintiff's Motion to Compel and Extend Discovery to Magistrate Judge Binder, ECF No. 40, is **VACATED** and the Motion to Compel, ECF No. 39, is **DENIED** as moot.

Dated: January 17, 2013                                     s/Thomas L. Ludington
                                                            THOMAS L. LUDINGTON
                                                            United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 17, 2013.
                    s/Tracy A. Jacobs
                    TRACY A. JACOBS