UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KYLE D. KENNARD,

       Plaintiff,                                  Case No. 11-15079
                                                   Honorable Thomas L. Ludington

v.

MEANS INDUSTRIES, INC.,
                                        /

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO AFFIRM ERISA ADMINISTRATOR'S DECISION AND DENYING PLAINTIFF'S MOTION TO REVERSE ERISA ADMINISTRATOR'S DECISION**

      Kyle Kennard, who was exposed to toxic fumes from a synthetic oil mixture which permanently damaged his lungs, applied for disability benefits under a group insurance policy (the Plan) issued by Means Industries, Inc. (Means). Means denied benefits, however, when it determined that Kennard was not totally and permanently disabled under the terms of the Plan. Kennard brought this action to recover benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), a provision of the Employee Retirement Income Security Act (ERISA). Upon review, the administrator's decision to deny benefits will be affirmed.

**I**

**A**

      Kennard began working for Means in 1983 and was employed there for over 20 years. In 1990, he suffered a severe injury to his lungs when he was exposed to an improperly mixed batch of synthetic oil. Rendered ultra-sensitive to airborne pollutants, Kennard received a life-long restriction to work in a clean-air environment. Means provided a clean-air environment, beginning in March 1992, and Kennard returned to work.

Kennard claims that over the next eight years Means' other employees received several increases in pay and cost of living adjustments, but he did not. So in 1999, Kennard filed a Michigan Workers' Compensation Act claim. In March of 2000, an agreement was reached to resolve Kennard's claims: he was paid $24,000 and given certain guarantees, including work-related restrictions to accommodate his lung injury.

In 2005, Means hired a new HR manager, Bruce Gluski. Mr. Gluski required Kennard to punch in and out on a time clock in Means' plant, which was not located in a clean air environment. Due to this exposure, Kennard claims he became increasingly ill and was forced to miss work. Eventually Kennard was laid-off during a reduction in force. He alleged, however, that Means then refused to pay workers' disability compensation benefits that he was otherwise entitled to, notwithstanding his employment termination. So in 2006, Kennard filed a second workers' compensation petition. This time, Means paid Kennard $220,000 — representing nearly ten years' worth of benefits.

On May 29, 2007, Kennard sought Social Security Disability (SSD) benefits, alleging that he was disabled as of February 14, 2006. After a hearing before the Honorable Joanne E. Adamczyk, the Social Security Administration found Kennard totally disabled in a decision dated October 6, 2009. Based on this finding, he then applied for disability retirement benefits under the Plan, which is governed by ERISA.[1] Kennard first requested the paperwork to begin the process, and Means sent him the appropriate forms on October 19, 2009. The next day, Kennard submitted the completed forms and initiated his request for disability retirement benefits under the Plan.

---

[1] Neither party disputes the fact that Means' employee benefit plan is governed by ERISA.

**B**

Section 2.3 of the Plan provides that an employee "who shall have become, through some unavoidable cause, permanently disabled and who at such time shall be an Eligible Employee shall be eligible for a disability benefit." Admin. R. 22, ECF No. 49. Section 2.3 then defines "permanent disability" under the Plan:

> A Participant shall be considered to be permanently disabled (as "permanently disabled" is used herein) only:
> (a) if he has been totally disabled by bodily injury or disease so as to be prevented thereby from engaging in any occupation or employment for remuneration or profit, and which condition constitutes total disability under the federal Social Security Act; and
> (b) after such total disability shall have continued for a period of six consecutive months and, in the opinion of a qualified physician chosen by the Committee (subject to Section 11), it will be permanent and continuous during the remainder of his life.

*Id*. According to the Plan's summary description, to qualify for disability retirement, "a physician selected by the Plan Administrator must determine that [the] disability totally and permanently prevents [an employee] from engaging in any occupation or employment." *Id*. at 5.

**C**

One month after Kennard submitted his long-term disability request form, Means' Senior Human Resources Director Joyce Hynes scheduled examinations with two doctors to review his alleged disability. *See id*. at 89. The appointments were with Dr. Gerald Levinson, D.O. on December 3, 2009, and Dr. Michael Holda, M.D. on December 10, 2009. Kennard was encouraged to "have any medical records with tests, etc." sent to the doctors before the appointments.[2] *Id*.

---

[2] Apparently, Dr. Levinson was intended to examine Kennard's lungs, while Dr. Holda was intended to assess previous reports of back pain. *See* Admin. R. 89 (requesting that Kennard send medical records concerning his lungs to Dr. Levinson and medical records concerning his back to Dr. Holda). However, Kennard maintains that "[t]he opinion of Dr. Holda . . . is a red herring. [Kennard] is not claiming total disability based [sic] orthopedic

Kennard was examined by Dr. Levinson on December 3 in Southfield, Michigan. Following the examination, Dr. Levinson authored a report in which he concluded:

> [Kennard] is permanently and totally medically disabled from his usual and customary employment at Means Industries on the basis of occupational asthma as described above. However, he is employable as long as he could be guaranteed that he would be placed in an absolute clean air environment with absolutely no noxious fumes or inhalants, as he is sensitive to this. If that criteria could be met, then he could be employable in a clerical position.

*Id*. at 88. Kennard was examined by Dr. Holda one week later in Flint, Michigan. After that examination, Dr. Holda authored his report. He recommended that Kennard "be restricted from repetitive bending and twisting at the waist and lifting over 25 pounds" with "no prolonged sitting, standing." *Id*. at 81. Dr. Holda did not conclude that Kennard could not work.

On the basis of Dr. Levinson's and Dr. Holda's medical examinations and reports, and in accordance with Plan terms, Means' Plan Administrator, Edward Shemanski, determined that Kennard was not permanently disabled. *See id.* at 73. On February 26, 2010, Mr. Shemanski sent Kennard a letter indicating that his "disability pension request" had been denied. *Id*. Specifically, Mr. Shemanski discussed the applicable Plan provision (2.3), outlined Dr. Levinson's and Dr. Holda's findings, and indicated that "[o]n the basis of your recent medical examination and in accordance with Plan terms, we have determined that you are not permanently disabled within the meaning of the Plan." *Id*. at 73–74.

**D**

On September 22, 2011, Kennard filed this case in Michigan's Saginaw County Circuit Court, claiming that Means denied his benefits claim in violation of both ERISA and Michigan's Workers Disability Compensation Act (WDCA). In that way the case was unusual: combining

---

claims. The disability is the result of longstanding occupational asthma. . . . Dr. Holda's opinion is not germane to the issues on appeal." Pl.'s Resp. 3.

an ERISA action with a state-law claim. On November 17, 2011, Means removed the action to this Court.

On June 13, 2012, Means filed a motion for a protective order to strike Kennard's discovery requests and limit him to the administrative record in the case. Means indicated that Kennard served "interrogatories, document requests, and requests for admissions that primarily concern [Kennard's] ERISA claim" in stark contrast with the limitations imposed by *Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609 (6th Cir. 1998). *See* Def.'s Mot. Prot. Order 1, ECF No. 7. In *Wilkins*, the Sixth Circuit established that a district court in an ERISA case is "confined to the record that was before the Plan Administrator." *Wilkins*, 150 F.3d at 614 (citing *Perry v. Simplicity Engineering*, 900 F.2d 963, 966 (6th Cir. 1990)).

Kennard responded to Means' motion, and indicated that "broad ranging discovery" was warranted on his WDCA claim, and additionally, that discovery was warranted on his ERISA claim because of "procedural defects." Pl.'s Resp. Mot. Prot. Order 6, 8, ECF No. 9. The Court granted the motion in part — restricting Kennard to the administrative record on his ERISA claim — but provided he could "seek to compel responses" related to his WDCA cause of action (noting, however, that such relief could not be sought in a response brief). *See* Aug. 3, 2012 Order 9, ECF No. 11. Kennard filed a motion for reconsideration, which was denied.

On October 12, 2012, Kennard filed a statement of procedural challenges again demanding the ability to go beyond the administrative record on his ERISA claim. He argued that there was sufficient evidence of bias to supersede the strictures of *Wilkins* and allow discovery. In addition, on November 14, 2012, Means filed a motion to dismiss Kennard's WDCA claim based on ERISA preemption.

The Court took up both issues in the same opinion. Again the Court disagreed with Kennard, overruled his procedural challenge, and maintained the restriction to the administrative record on his ERISA claim. The Court concluded that "[b]ecause [Kennard's] statement of procedural challenges is based on nothing more than general allegations, without factual support," he was not entitled to "discovery outside the administrative record." *See* Jan. 17, 2013 Op. & Order 12, ECF No. 47. The Court also granted Means' motion to dismiss, as Kennard had previously acknowledged that "his state law claim for wrongful retaliation under the Michigan Workers Disability Compensation Act is preempted" by ERISA. *Id*. at 7 (quoting Pl.'s Resp. Mot. Dismiss 1).

On February 25, 2013, both Kennard and Means filed motions regarding the plan administrator's decision: Kennard to reverse, Means to affirm. The same day, Means filed the administrative record on the docket. On March 18, both parties responded to the other's motion. Means also filed an errata sheet, adding one page to the administrative record that had not been previously filed. *See* Errata Sheet re: 49 Admin. R., ECF No. 54. The next day, Means filed errata sheets concerning both its motion to affirm the administrator's decision and its response to Kennard's motion. The errata sheets were filed "to reflect administrative record page references." *See* Errata Sheet re: Mot., ECF No. 55; Errata Sheet re: Resp., ECF No. 56.

This is where the parties' papers become difficult to explain. On March 20, 2013, Kennard filed 112 pages of amended exhibits, without indicating what the exhibits are or how they relate to the pending motions. Upon review, the documents appear to be a copy of the administrative record with the addition of four pages (the record filed by Means, including the errata sheet, is 108 pages long). But Kennard makes no attempt to explain the filing. The same day, Means replied to Kennard's response to its motion to affirm.

On March 25, 2013, Kennard filed an objection to the administrative record. Kennard first argues the administrative record filed by Means "did not comport with the administrative record as it was provided to the Plaintiff." Pl.'s Obj. 1, ECF No. 59. But Kennard does not explain whether the administrative record as filed by Means is different from that reviewed by Mr. Shemanski when reviewing Kennard's claim for benefits. Kennard then drops into a discussion that appears to be a reply to Means' response to his motion to reverse the administrator's decision. He argues that Means "failed to apprise the Plaintiff how to perfect his claim or file an appeal in the plan administrator's rejection letter."[3] *Id*. at 2. Means then filed an objection to Kennard's objection, but does not address his claim that the administrative record is deficient. Instead, Means only takes issue with Kennard's argument that he was not told how to perfect his claim or file an appeal.

## II

"A denial of benefits challenged under § 1132(a)(1)(B) . . . is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 657 (6th Cir. 2013) (brackets omitted) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). "When such authority is granted, the highly deferential arbitrary and capricious standard of review is appropriate." *Borda v. Hardy, Lewis, Pollard, & Page, P. C.*, 138 F.3d 1062, 1066 (6th Cir. 1998) (internal quotation marks omitted).

---

[3] Kennard raises this argument for the first time in his objection, or reply brief. The argument is not a part of his motion to reverse the plan administrator's decision, nor does it appear in his response to Means' motion to affirm. As this is the case, the argument will not be addressed in this opinion: "[r]eply briefs may not raise new arguments or issues." *United States v. Reynolds*, No. 12-20843, 2013 WL 1278194, at *3 (E.D. Mich. Mar. 27, 2013); *see also United States v. Galaviz*, 645 F.3d 347, 362 (6th Cir. 2011) ("We do not usually entertain new arguments raised for the first time in a reply brief.") (citing *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002)).

Here, the Plan granted the plan administrator (Mr. Shemanski) discretionary authority to interpret the terms of the plan and to determine benefits.  Indeed, Kennard concedes that review for arbitrariness is the correct standard of review.  *See* Pl.'s Mot. 11.

A plan administrator's decision will not be deemed arbitrary or capricious so long as "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Judge*, 710 F.3d at 657–58 (quoting *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (noting that "[t]he arbitrary or capricious standard is the least demanding form of judicial review of administrative action") (internal quotation marks omitted)).  A benefits determination will be upheld if it is "rational in light of the plan's provisions."  *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004).  The review of a plan administrator's decision is limited to the administrative record; that is, courts "are required to consider only the facts known to the plan administrator" at the time of the decision.  *Judge*, 710 F.3d at 658 (quoting *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996)).  Of course, the arbitrary and capricious standard "does not require [courts] merely to rubber stamp the administrator's decision."  *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004) (citation omitted).  Instead, courts are required to review "the quality and quantity of the medical evidence and the opinions on both sides of the issues."  *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003).

### III

Kennard argues that the plan administrator's conclusion that he "is not disabled" is arbitrary and capricious.  Pl.'s Mot. 17.  The main thrust of Kennard's argument is that Dr. Levinson actually opined that Kennard was disabled, and Mr. Shemanski's interpretation of the opinion is flawed.  He also complains that Means is hampered by a conflict of interest and that Mr. Shemanski did not give any consideration to the decision of the Social Security

Administration when denying benefits. Ultimately, Kennard's arguments are without merit, and the Mr. Shemanski's decision will be affirmed.

**A**

Before reaching Kennard's arguments concerning the plan administrator's decision, one other issue must be addressed. Namely, Kennard's contention that the administrative record has been altered by Means, with eleven pages removed.[4]

However, aside from the value of one missing page (which Means has filed), Kennard makes no mention of how the allegedly omitted pages would assist his case by showing that he is totally disabled.

Further, Kennard offers no evidence to demonstrate that the record Means filed is any different from the record the plan administrator reviewed when determining whether benefits were to be awarded. Means is only required to furnish to the court materials that "exist as a part of the Administrative Record." *Likas v. Life Ins. Co. of North America*, 222 F. App'x 481, 485 (6th Cir. 2007). In addition, "[t]he Administrative Record is precisely the *only* evidence the District Court may consider." *Id.* at 486 (emphasis in original) (citation omitted). Without demonstrating that Means has omitted some materials that Mr. Shemanski considered, a showing Kennard has not made, the Court will address the record as filed.

**B**

Kennard suggests there are two issues that weigh in favor of concluding that Mr. Shemanski's decision was arbitrary and capricious: Means' conflict of interest and the lack of discussion concerning the Social Security Administration disability determination. Kennard is

---

[4] However, when taking into account the page filed by errata sheet on March 18, 2013, and the fact that the competing record Kennard filed is only 112 pages long, the Court concludes that only four potential pages are missing (by Kennard's count).

correct — while neither issue is dispositive, they should both be considered when determining whether the plan administrator acted arbitrarily.

In the instant case, Means is authorized both to decide whether an employee is eligible for benefits and to pay those benefits. "This dual function creates an apparent conflict of interest." *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006) (citation omitted). When such a factor is present, it requires "consideration by the district court." *Id*.

Additionally, as Kennard consistently emphasizes, the Social Security Administration concluded that he was totally disabled and granted SSD benefits. "The courts have recognized that a disability determination by the Social Security Administration is relevant in an action to determine the arbitrariness of a decision to terminate benefits under an ERISA plan." *Glenn*, 461 F.3d at 667. Further, "an ERISA plan administrator's failure to address the Social Security Administration's finding that the claimant was 'totally disabled' is yet another factor that can render the denial of further long-term disability benefits arbitrary and capricious." *Id*. at 669. So while the Social Security Administration's decision is not binding, it is relevant, and will be discussed here.

## C

Based on the administrative record — despite Mr. Shemanski's failure to acknowledge the Social Security Administration's decision and despite Means' conflict of interest — the decision to deny Kennard's application for disability benefits was not arbitrary and capricious. Because the decision is based upon "substantial evidence," *Glenn*, 461 F.3d at 666, and because it is possible to offer a reasoned explanation for the outcome, *Judge*, 710 F.3d at 657–58, the decision will be affirmed.

"[T]he ultimate issue in an ERISA denial of benefits case is not whether discrete acts by the plan administrator are arbitrary and capricious but whether its ultimate decision denying benefits was arbitrary and capricious." *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 362 (6th Cir. 2002). In light of the consistent assessments that Kennard was capable of sedentary work in a clean-air environment, the decision that he is not totally disabled is not arbitrary.

A finding of "total disability" under the Plan requires three things: (1) that an individual cannot engage "in *any* occupation or employment for remuneration or profit"; (2) a finding of "total disability under the federal Social Security Act"; and (3) that the total disability "will be permanent and continuous." Admin. R. 22 (emphasis added). Here, only the first requirement is at issue — Kennard was deemed totally disabled by the Social Security Administration and each doctor to examine him concluded his pulmonary issues will be lifelong. A review of the record, however, demonstrates substantial evidence that Kennard is not prevented from engaging in any occupation or employment.

Dr. Levinson concluded that Kennard was not precluded from working because of his lungs. Dr. Levinson performed an in-person analysis of Kennard on December 3, 2009, and Kennard does not question the comprehensive nature of the examination. Instead, he only contests Mr. Shemanski's interpretation of Dr. Levinson's analysis: "Dr. Levinson did not opine that Kennard was not disabled." Pl.'s Mot. 15. But this position is not substantiated. Dr. Levinson *did* opine that Kennard is not disabled so long as he is "placed in an absolute clean air environment." Admin. R. 88. Under those conditions, Dr. Levinson established that Kennard is "employable in a clerical position." *Id*.

Moreover, even the Social Security Administration — which held Kennard was totally disabled — determined that he "has the residual functional capacity to perform sedentary work." Admin. R. 103. Kennard concedes the point: "According to the ALJ's findings, [Kennard] would be able to do sedentary work but he would have to avoid extreme temperatures, humidity, odors, dusts, fumes and gasses." Pl.'s Mot. 9.

Kennard also acknowledges that the Social Security Administration did not find him disabled "on lung function alone." *Id.* It was only after job availability was analyzed that he was deemed disabled, as "there are no jobs that exist *in significant numbers in the national economy* that [Kennard] can perform." Admin. R. 105 (emphasis added). Notably, the Plan language does not indicate a disabled individual is one that cannot perform jobs that exist in significant numbers, but only those that cannot perform *any* work for remuneration or profit. *Id.* at 22. It is because of this — the "critical differences between the Social Security disability program and ERISA benefit plans," *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833 (2003) — that "an ERISA plan administrator is not bound by an SSA disability determination," *Whitaker v. Hartford Life and Acc. Ins. Co.*, 404 F.3d 947, 949 (6th Cir. 2005). So while the Social Security Administration found Kennard was disabled under the Social Security Act, it does not follow that he is necessarily disabled under the Plan.

After the Social Security Administration and Dr. Levinson determined that Kennard is capable of sedentary work under certain restrictions, Mr. Shemanski concluded Kennard is not disabled under the terms of the Plan. Kennard argues that Shemanski "failed to explain where or what job [Kennard] could possibly do." Pl.'s Mot. 16. But this argument lacks merit. Although the Social Security Administration utilized a vocational expert to determine the jobs Kennard could perform (concluding none existed in significant numbers), a plan administrator is "not

required to consider vocational evidence, as opposed to medical evidence" in assessing an ERISA claim. *Burge v. Republic Engineered Prods., Inc.*, 432 F. App'x 539, 550 (6th Cir. 2011) (citing *Douglas v. Gen. Dynamics Long Term Disability Plan*, 43 F. App'x 864, 870 (6th Cir. 2002)); *see also Judge*, 710 F.3d at 662–63 ("a plan administrator is not required to obtain vocational evidence where the medical evidence contained in the record provides substantial support for a finding that the claimant is not totally and permanently disabled."). The fact that Mr. Shemanski did not explain what jobs Kennard could perform, only that he could perform some job based on the medical evidence, does not render his determination arbitrary and capricious.

Kennard, refusing to concede, continues: "It is well settled that the mere chance of there being a job somewhere in the universe is insufficient for ERISA disability determinations." Pl.'s Mot. 17. But the case Kennard relies upon for this proposition is inapplicable. Citing *Glenn v. MetLife*, discussed above, Kennard argues that "[t]he mere possibility that a participant in an ERISA plan might be able to return to some type of gainful employment, in light of overwhelming evidence to the contrary, is an insufficient basis upon which to support a plan administrator's decision to deny that participant's claim for [long-term disability] benefits." Pl.'s Mot. 17 (quoting *Glenn*, 461 F.3d at 674).

But Mr. Shemanski did not rely on the "mere possibility" that Kennard "might be able to return to some type of gainful employment"; instead, Mr. Shemanski relied upon Dr. Levinson's opinion — which is not so attenuated. Dr. Levinson established that "gainful employment *would* be possible" for Kennard if a clean-air environment was provided. Admin. R. 88 (emphasis added). *Glenn* is also distinguishable because the court determined that the claimant was precluded from working:

> [A] claimaint's potential ability "to return to work under certain limited circumstances," *McDonald*, 347 F.3d at 170, should not be taken to satisfy the requirements of the Sears ERISA plan when those circumstances are, as here, very limited and *would not permit Wanda Glenn, pursuant to the language of the plan, to perform the duties of gainful work for which she is reasonably qualified*.

461 F.3d at 674 (emphasis added). Again, Kennard was not prevented from performing gainful employment by his circumstances. All he required to work was a clean-air environment. Buttressing this conclusion is the fact that Kennard was employed by Means for 14 years after suffering his lung injuries and worked until a reduction in force. Means was able to provide a satisfactory clean-air environment for over a decade; Kennard's contention that "there is no evidence in the record that such a job exists," Pl.'s Mot. 16, is unfounded.

Kennard also argues that Mr. Shemanski "ignored" medical evidence from Kennard's treating physician, Dr. Harbut, emphasizing that "Dr. Harbut . . . totally disabled [sic] [Kennard]." Pl.'s Mot. 16. This argument is misguided. Generally, when a plan administrator relies upon "the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation" for the decision. *McDonald*, 347 F.3d at 169 (collecting cases). Moreover, Dr. Harbut's opinion is not a part of the administrative record, and it cannot — and should not — be considered now.

Finally, Kennard contends that Mr. Shemanski's determination is arbitrary because of an inherent conflict of interest, given the fact that Mr. Shemanski possesses both the authority to decide eligibility for benefits and to pay benefits. However, under clearly established Sixth Circuit precedent, a plaintiff who asserts a conflict of interest must "also provide 'significant evidence' that the conflict actually affected or motivated the decision at issue." *Cooper v. Life*

*Ins. Co. of North America*, 486 F.3d 157, 165 (6th Cir. 2007) (citing *Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433 (6th Cir. 1998)).

Kennard indicates that Means "erroneously determined that [Kennard] was not disabled based on a misreading of the assessment of one physician, procured and paid for by [Means]." Pl.'s Mot. 12. But Kennard then establishes that "Both of the IMEs in this case, Drs. Levinson and Holda were procured through Consulting Physicians P.C., an entity that locates physicians to employers and insurance companies in workers compensation and disability type cases." *Id*. at 12 n.7. Thus, Kennard makes clear that Consulting Physicians P.C., and not Means, selected Dr. Levinson for Kennard's examination.

Next, Kennard discusses "fourteen years of increasing acrimony between [Kennard] and the human resources department of [Means]" and "anomalies in the processing of [Kennard's] claim." *Id*. at 13. He argues that "the decision of Shemanski is arbitrary and capricious and was influenced by both the [sic] personal and professional animosity." *Id*. at 14. But Kennard alleges no bias on the part of Shemanski, but that of a previous HR manager, Gluski (who required Kennard to clock in and out in Means' plant). When it comes to connecting any conflict of interest to Mr. Shemanski's determination, all Kennard can do is speculate: "These events, in conjunction with all of the other events with Mr. Gluski . . . certainly raises a likelihood of a severe conflict of interest in this case where Gluski worked with, and would have been in a position to have discussions with and influence the Plan Administrator, Shemanski." *Id*. at 13 n.8. The Court has already determined, however, that "Mr. Gluski was not employed by [Means]" when the decision to deny Kennard's benefits claim was made. Sept. 25, 2012 Op. & Order 5, ECF No. 20.

In short, Kennard offers no evidence — much less significant evidence — that a conflict of interest affected Mr. Shemanski's decision. It was not Shemanski that chose Dr. Levinson, but Consulting Physicians. And Kennard has provided no evidence that Mr. Gluski influenced Shemanski's decision. Mr. Gluski was not employed by Means at the time the decision to deny benefits was made. So although a conflict of interest is a factor to consider when deciding whether a decision was arbitrary, Kennard has not demonstrated Shemanski's inherent conflict of interest affected his decision in any way.

Kennard asserts that "[t]here is no deliberate principled reasoning process that takes the statement that [Kennard] could work in an 'absolute clean air environment' as support for the conclusion that [Kennard] is not disabled." Pl.'s Resp. 4. The simple language of the Plan overcomes Kennard's assertion. The standard bears repeating: only those that are prevented "from engaging in *any* occupation or employment for remuneration or profit" are disabled under the clear language of the Plan. Kennard is not foreclosed from any occupation or employment; only those occupations that do not have a clean-air environment. Pursuant to the Plan, Kennard is not permanently disabled.

### IV

Accordingly, it is **ORDERED** that Means' motion for judgment affirming the ERISA administrator's decision, ECF No. 50, is **GRANTED**.

It is further **ORDERED** that Kennard's cross motion for summary judgment, ECF No. 48, is **DENIED**.

- 17 -

It is further **ORDERED** that Kennard's complaint, ECF No. 1, is **DISMISSED** with prejudice. This is a final order and closes the case.

Dated: June 13, 2013                                                         s/Thomas L. Ludington
                                                                                              THOMAS L. LUDINGTON
                                                                                              United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 13, 2013.
                                s/Tracy A. Jacobs
                                TRACY A. JACOBS