UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KYLE KENNARD,

                    Plaintiff,                                        Case No. 11-cv-15079

v.                                                                    Honorable Thomas L. Ludington

MEANS INDUSTRIES, INC.,

                    Defendant.

_____/

**ORDER GRANTING IN PART RENEWED MOTION FOR ATTORNEY FEES**

On November 17, 2011, Plaintiff Kyle Kennard removed this suit from Saginaw County

Circuit Court. ECF No. 1. Kennard's complaint sought a judgment that he was entitled to group

disability benefits from his employer's Employment Retirement Income Security Act (ERISA)

plan. On June 13, 2013, the Court issued an opinion and order finding that the ERISA Plan

Administrator's decision to deny benefits was not arbitrary or capricious. ECF No. 61. Kennard

appealed, and the Sixth Circuit concluded that the Plan Administrator had failed to show that

jobs existed which Kennard could perform given his medical limitations. ECF No. 65. The Sixth

Circuit remanded and instructed the Court to "award Kennard disability retirement benefits." *Id.*

at 6.

Although Kennard's entitlement to disability retirement benefits was thus established, the

precise amount of the benefits was uncertain. Accordingly, this Court remanded to the Plan

Administrator to calculate the amount of benefits Kennard is entitled to. ECF No. 76. The Plan

Administrator concluded that Kennard was entitled to zero benefits because he had received a

workers' compensation benefit from Means that was coordinated with his long-term disability

benefit. In other words, the already-received workers' compensation benefit was set off or credited against the long-term disability benefit, resulting in a net payment due of zero dollars. On July 7, 2015, the Court issued an opinion and order confirming that the Plan Administrator's decision to set off the benefits was required by the plan language. ECF No. 91.

Kennard appealed, arguing that the Court had ignored the Sixth Circuit's direction to order payment of benefits when it remanded to the Plan Administrator for a calculation of benefits. Kennard also argued that Defendant Means had waived the setoff argument because it did not raise the argument before the Court during the original round of briefing on the motion for summary judgment and because the Sixth Circuit had rejected the setoff argument in the first appeal. In a split decision, the Sixth Circuit affirmed. ECF No. 97. The Sixth Circuit concluded that the Court's decision to remand for a calculation of benefits was consistent with its first order and further held that the setoff defense had not been waived "because Kennard had notice of it and ample opportunity to rebut it." *Id.* at 4.

Kennard sought review by the United States Supreme Court, but his petition for a writ of certiorari was denied on April 25, 2017. On May 23, 2017, Kennard filed a motion for attorney fees. ECF No. 108.[1] For the following reasons, Kennard's motions will be granted.

**I.**

The factual predicate for Kennard's petition for disability benefits is not directly relevant to the present motion for attorney fees. Accordingly, the facts as articulated in the Court's July 7, 2015, opinion and order will be adopted as if restated in full.

**II.**

---

[1] Kennard filed substantially identical motions for attorney fees at several earlier points in the litigation. Because Kennard was still pursuing appellate relief and thus attorney fees were still being accumulated, those earlier motions were denied without prejudice.

Kennard's counsel seeks an award of attorney fees pursuant to 29 U.S.C. § 1132(g). Pursuant to § 1132(g), "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." The party seeking fees need not be a "'prevailing party' to be eligible for an attorney's fees award." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252 (2010). Rather, they must simply achieve "some success on the merits." *Id.* at 256. "The punishment of bad faith litigants is a legitimate purpose under ERISA, but not the only purpose." *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1304 (6th Cir. 1991). Rather, "[t]he authorization was intended to enable pension claimants to obtain competent counsel and to distribute the economic burden of litigation in a fair manner." *Ford v. N.Y. Cent. Teamsters Pension Fund*, 506 F. Supp. 180, 182 (W.D.N.Y. 1980). When determining whether to award fees, courts consider the following five factors:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Sec'y of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985).

"The *King* factors—as they have been dubbed in this Circuit—are not statutory and thus should be viewed flexibly, with no one factor being "'necessarily dispositive.'" *Geiger v. Pfizer, Inc.*, 549 F. App'x 335, 338 (6th Cir. 2013) (quoting *Foltice v. Guardsman Products, Inc.*, 98 F.3d 933, 937 (6th Cir. 1996)).

**A.**

Kennard contends that he achieved significant success on the merits, via the Sixth Circuit's conclusion that he was entitled to benefits under the plan, despite his zero dollar recovery due to the set off against his workers compensation benefits. Kennard specifically

emphasizes that the Sixth Circuit found that there was "no evidence in the record to support a termination or denial of benefits.'" *Kennard I* at 6, ECF No. 65 (quoting *Shelby Cnty. Health Care Corp. v. Majestic Star Casino, LLC*, 581 F.3d 355, 373 (6th Cir. 2009)). Kennard acknowledges that no benefits were ultimately recovered, but contends that "[m]erely the opportunity of getting a case reconsidered makes one eligible for attorney fees." Mot. Atty Fees at 4, ECF No. 108.

However, as Means asserts, there is no presumption in the Sixth Circuit that fees should be awarded simply because some (or even significant) success was achieved. *Foltice v. Guardsman Prod., Inc.*, 98 F.3d 933, 936 (6th Cir. 1996). The proper focus, then, is not on a metaphysical discussion of whether Kennard was actually successful or not, but whether the *King* factors justify an attorney fees award.[2]

The first of those factors focuses on the degree of the opposing party's culpability or bad faith. Means contends that it did not act with culpability or in bad faith, despite the denial of benefits. And it is true that "[a]n arbitrary and capricious denial of benefits does not necessarily indicate culpability or bad faith." *Heffernan v. UNUM Life Ins. Co. of Am.*, 101 F. App'x 99, 109 (6th Cir. 2004). However, Sixth Circuit law "by no means precludes a finding of culpability or bad faith based only on the evidence that supported a district court's arbitrary-and-capricious determination." And where the defendant ignores "overwhelming evidence of . . . disability" and denies the claim "based on a theory that lacked legitimate foundation," then culpability exists. *Heffernan v. UNUM Life Ins. Co. of Am.*, 101 F. App'x 99, 109 (6th Cir. 2004). *See also Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 530 (6th Cir. 2008) (similar); *Shaw v. AT&T Umbrella*

---

[2] Kennard clearly received "some" success on the merits because he succeeded in achieving a remand. *See McKay v. Reliance Standard Life Ins. Co.*, 428 F. App'x 537, 547 (6th Cir. 2011). Although he did not actually receive payments, he nevertheless affirmatively demonstrated that the medical evidence in the record did not justify the Plan Administrator's decision that Kennard was not disabled.

*Benefit Plan No. 1*, No. 13-CV-11461, 2015 WL 8177654, at \*3 (E.D. Mich. Dec. 8, 2015)

(explaining that the first *King* factor weighed in plaintiff's favor because there was substantial

evidence of disability which the plan administrator ignored in reliance on isolated snippets from

the record).

Here, the Sixth Circuit did not simply find that the Plan Administrator's denial of benefits

was arbitrary and capricious. Rather, the Sixth Circuit found that "the Plan Administrator's

decision that Kennard can work is not 'the result of a detailed, principled reasoning process and .

. . supported by substantial evidence.'" *Kennard I* at 5, ECF No. 65 (quoting *Elliot v. Metro. Life*

*Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006)). The Sixth Circuit also cited *Shelby Cnty. Health*

*Care Corp.*, 581 F.3d at 373, in holding that benefits should be awarded. *Id.* at 6. In *Shelby*, the

Sixth Circuit explained that remand is appropriate where "the plan administrator's decision

suffers from a procedural defect or the administrative record is factually incomplete." *Shelby*,

581 F.3d at 373. But the *Shelby* Court explained that remand was inappropriate where the plan

administrator's decision was "'simply contrary to the facts.'" *Id.* at 374 (quoting *Grosz–Salomon*

*v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1163 (9th Cir. 2001)). In quoting *Shelby* to suggest

that an award of benefits was appropriate without remand to the Plan Administrator, the Sixth

Circuit thus indicated that the Plan Administrator's original decision was factually and legally

unsupported.

Thus, although a finding that a denial of benefits was arbitrary and capricious does not in

every circumstance involve a finding of bad faith and culpability, the Sixth Circuit's rationale in

*Kennard I* does support that finding. Here, the Sixth Circuit concluded that the Plan

Administrator failed to address or rebut the Social Security Administration's finding that "'there

are no jobs in the national economy that Kennard could perform.'" *Kennard I* at 5 (quoting

Admin. Rec. at 106). Despite confirming that the Plan Administrator was not required to "seek out vocational evidence" or "apply the SSA's legal standard for disability," the Sixth Circuit concluded that the Plan Administrator erred "[i]n failing to tackle the implicit non-existence of jobs compliant with the strict condition . . . prescribed." *Id.* Because the Sixth Circuit found that the Plan Administrator based the denial of benefits on an illegitimate theory of alternative employment, the first *King* factor weighs in favor of awarding attorney fees.

**B.**

Means admits that it has the financial ability to pay reasonable attorney fees. Admittedly, financial ability does not, alone, justify an attorney fees award. *Krupp v. Metro. Life Ins. Co.*, 174 F. Supp. 2d 545, 548 (E.D. Mich. 2001). But analysis of the second *King* factor, at the very least, supports an attorney fees award here.

**C.**

The third factor to consider is whether an attorney fee award would operate as a deterrent. Means argues that "fee awards are likely to have the greatest deterrent effect where deliberate misconduct is in the offing" and asserts that there was no deliberate misconduct here. *Foltice v. Guardsman Prod., Inc.*, 98 F.3d 933, 937 (6th Cir. 1996). *Foltice* involved what the Sixth Circuit described as "[h]onest mistakes." *Id.* But the *Foltice* Court implicitly recognized that there can be a legitimate deterrent effect even when the plan administrator is not highly culpable. Although the Sixth Circuit's opinion found that the Plan Administrator erred in refusing to award benefits, it does not clearly articulate the level of culpability assignable to him. But even construing the Plan Administrator's decision as the result of negligence and not bad faith, there is a strong

interest in deterring negligent decision making.[3] The Sixth Circuit has recognized that incentivizing plan administrators to provide a "full and fair review" is a proper consideration when determining whether to award fees. *See McKay*, 428 F. App'x at 546 ("[T]he district court found that there was a deterrent effect for plan administrators to avoid failing to provide the necessary full and fair review."). The third *King* factor supports an attorney fee award.

**D.**

Kennard's suit never implicated any novel or significant legal questions regarding ERISA. Kennard attempts to argue that his suit provides a common benefit to employees in similar plans because plan administrators may be encouraged to conduct a fuller review of benefit claims. But even if true, Kennard's suit, by its own terms, was about recovering benefits for himself personally. He has made no express effort to confer a common financial benefit on other members of the plan. *See Foltice*, 98 F.3d at 937 ("The merits of the case do not turn on the resolution of any difficult ERISA question, and most of the participants in and beneficiaries of the Guardsman plan stood to gain nothing from this lawsuit."). The fourth *King* factor thus weighs against an attorney fee award.

**E.**

In the final *King* factor, the relative merit of the parties' position must be analyzed. Kennard and Means both argue that their position had more merit. Kennard's argument that the Plan Administrator's denial of benefits was arbitrary and capricious did, eventually, succeed. But Means' argument that Kennard was owed no payments, despite his entitlement to disability benefits, because of a worker's compensation setoff provision in the plan also ultimately succeeded. This Court originally found that the denial of benefits was not arbitrary and

---

[3] As discussed below, the Plan Administrator should have addressed the setoff language in the Plan in the first instance, avoiding a significant and unnecessary expenditure of judicial resources. Plan administrators should be incentivized to address all arguments, especially potentially dispositive ones, at the original review of the claim.

capricious, and even the Sixth Circuit opinion reversing that decision was not unanimous. Accordingly, Means' opposition to Kennard's suit cannot be characterized as frivolous. Yet, Kennard's argument that the denial of benefits was arbitrary and capricious was ultimately successful and thus had the most merit.

Conversely, while Means ultimately avoided payment of any benefits by advancing a setoff argument, that argument was not raised until late in the process. Means did not assert that defense in its motion for summary judgment before the Court. *See* ECF No. 50.[4] The Sixth Circuit's first opinion did not address the argument. Means did assert it upon remand and the argument ultimately proved meritorious. But the merit of the position is undermined, to a certain extent, by its untimeliness. Had the argument been directly highlighted before this Court and the Sixth Circuit, this litigation might have been dramatically shortened.

Means has not tendered an explanation for why the setoff argument was not addressed originally by the Plan Administrator. Likewise, Means has not explained why it did not raise the argument in its motion for judgment on the administrative record. Means' decision to omit the argument is made even more perplexing by the fact that Means was aware of the setoff argument prior to the filing of dispositive motions. *See* Feb. 14, 2012 Letter at 4, ECF No. 90, Ex. 5. The protracted proceedings in this matter can be attributed primarily to Means' (and the Plan Administrator's) inattention to the setoff argument. Thus, even though Means prevailed on the setoff argument, it is not clear that the success should weigh against an award of attorney fees for Kennard's counsel.

Ultimately, both Kennard and Means advanced meritorious arguments. But there is no need to narrowly parse which party's position had more merit. Rather, little weight will be given

---

[4] Means did raise this argument, for the first time, in its reply brief in opposition to Kennard's motion for summary judgment. *See* ECF No. 60. Given the stage at which it was raised and the result reached, the Court did not address the defense in its order granting judgment on the administrative record.

to the fifth *King* factor. Even setting that factor aside, three of the four factors support an award of attorney fees. Because the fifth factor does not clearly support one party over the other, it does not change the analysis. Kennard's request for attorney fees will be granted.

**III**

The remaining question is whether the amount of fees which Kennard's counsel requests is reasonable. Kennard's counsel, Mandel Allweil, has filed an affidavit asserting that he has spent 689.50 hours in this matter and is seeking an hourly rate of $382.25. In total, Allweil seeks $263,561.37 in attorney fees. He also seeks $10,624.27 in costs.

The starting point in determining the reasonableness of attorneys' fees is the "lodestar" method. *Wayne v. Vill. of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994). Under this method, a reasonable rate is calculated by multiplying "the number of hours reasonably expended" by "a reasonable hourly rate." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)) (internal quotation marks omitted). "Next, the resulting sum should be adjusted to reflect the result obtained." *Id.* (internal quotation marks omitted). Adjustments may be made "to reflect relevant considerations peculiar to the subject litigation." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000).

The last step in the lodestar analysis is determining if any reductions to the lodestar figure are warranted. The Sixth Circuit has incorporated the twelve factors set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), as a starting point for determining if adjusting the lodestar figure is warranted. *Adcock-Ladd*, 227 F.3d at 349.[5]  "Accordingly, modifications [to the lodestar] are proper only in certain 'rare' and

---

[5] "These factors are: (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the

'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts." *Adcock-Ladd*, 227 F.3d at 349-50 (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). A district court awarding fees "must provide a clear and concise explanation of its reasons for the fee award." *Wayne*, 36 F.3d at 533 (quoting *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995)).

## A.

Means challenges the request for attorney fees on several different bases. Those challenges will be addressed in turn. The Court does not have the resources to exhaustively audit every line of counsel's invoices. Rather, the "essential goal in [awarding reasonable fees] is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Given the prolonged nature of this litigation, a significant number of hours is to be expected. For the following reasons, attorney fees will be granted in the amount of $127,410.94.

## 1.

The initial task is to determine the reasonable rate. Allweil is seeking a rate of reimbursement at $382.25 per hour. He has been an attorney for 35 years and has extensive experience in employment litigation, including ERISA actions. Allweil Aff. at 1, ECF No. 108, Ex. 4. He has enjoyed considerable success at trial and has been published multiple times. *Id.* at 1–2.

"To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). In other words, the appropriate rate "is not necessarily the exact value sought by a

experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Reed v. Rhodes*, 179 F.3d 453, 471–72 n.3 (6th Cir. 1999) (citing *Johnson*, 488 F.2d at 717–19).

- 10 -

particular firm, but is rather the market rate in the venue sufficient to encourage competent representation." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007).

Both parties agree that the 2014 Economics of Law Practice Report provides data regarding the prevailing market rate for Michigan attorneys. *See* 2014 Econ. Law. Rep., ECF No. 108, Ex. 5. According to that report, Michigan attorneys with thirty-five years of service received a mean hourly rate of $276, a 75th percentile rate of $300, and a 95th percentile rate of $515. *Id.* at 4. Allweil practices in a three person firm. Attorneys in three person firms receive a mean hourly rate of $259, a 75th percentile rate of $300, and a 95th percentile rate of $400. *Id.* at 5. Attorneys representing plaintiffs in employment law claims receive a mean hourly rate of $274, a 75th percentile rate of $330, and a 95th percentile rate of $450. *Id.* at 6. Attorneys in the Bay City, Midland, and Saginaw areas receive a mean hourly rate of $228, a 75th percentile rate of $250, and a 95th percentile rate of $450. *Id.* at 5.

Thus, Allweil's requested rate of $382.25 per hour is above the 75th percentile hourly rate, but below the 95th percentile hourly rate, for similar attorneys in Michigan. As an attorney with thirty-five years of experience, Allweil undoubtedly commands higher hourly rates than less-experienced attorneys. And Allweil represented Mr. Kennard competently and zealously in this litigation. But Allweil requests an hourly rate which roughly corresponds to the 85th percentile of all attorneys with 31 to 35 years of experience. Compensation at that level is not necessary to "encourage competent representation" by similar attorneys in the area. Rather, an hourly rate commiserate with the mean hourly rate for similar attorneys appears sufficient.

However, Allweil contends that the requested hourly rate is also reasonable because "where the resolution of case results in an all or nothing proposition, if a plaintiff's attorney only wins 50% of the proceedings, the effective rate of reimbursement for all time spent is really the

rate requested . . . divided by 2." Pl. Mot. Atty Fees at 10–11, ECF No. 108. There is some support for this argument: "the reasonable hourly rate may be adjusted *upward* to account for the risk of non-payment inherent in a contingency fee arrangement." *Hamlin v. Charter Twp. of Flint*, 165 F.3d 426, 438 (6th Cir. 1999) (emphasis in original). But there is reason to question the necessity of an upward adjustment for contingency risks, at least in this circumstance. First, the lodestar model operates by looking to the hourly rate, which is inapplicable to attorneys proceeding on a contingency arrangement. There are logical economic reasons to anticipate a "[c]ontingency enhancement . . . in the contingent-fee model (since attorneys factor in the particular risks of a case in negotiating their fee and in deciding whether to accept the case.)" *City of Burlington v. Dague*, 505 U.S. 557, 566 (1992). But importing the contingency enhancement to the lodestar context would "concoct a hybrid scheme." *Id.* And it seems possible that such hybridization would result in a windfall for the attorney, especially in the absence of evidence "that without risk enhancement plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 731 (1987).

Allweil's request for a contingency enhancement is made more peculiar by the fact that, if Allweil was seeking payment solely on a contingency-fee model, he would recover nothing in this instance. The contingency enhancement Allweil seeks is applied to fee recoveries in cases where a financial recovery is obtained to compensate for losses in cases where no award was received. Providing a contingency enhancement here would thus produce a kind of double-counting: Allweil would receive additional compensation *in a case where the client recovered nothing* to offset his losses in financially unsuccessful cases. While the Court has concluded

(above) that an attorney fee award is appropriate despite the lack of a monetary recovery, a contingency enhancement would be inappropriate for the same reason.

The mean hourly rate for attorneys with 31 to 35 years of experience is $276. The mean hourly rate for plaintiffs attorneys asserting employment law claims is $274. Those two characteristics seems most probative here. Because an hourly rate of $275 is sufficient to encourage competent representation and is commiserate with Allweil's experience, that rate will be used.

**2.**

Next, the Court must determine the reasonable number of hours expended. Allweil spent 689.50 hours representing Mr. Kennard in his quest for disability benefits. Means argues that Allweil spent an unreasonable and excessive amount of time representing Mr. Kennard. Means highlights several examples: Allweil spent a substantial amount of hours "seeking discovery contrary to established precedent against unnecessary discovery in ERISA disputes because review is limited to the administrative record"; Allweil seeks compensation for "seeking a Writ of Mandamus"; and Kennard's pleadings included "lengthy, irrelevant, and unnecessary factual allegations having nothing to do with the Plan Administrator's decision to deny benefits." Def. Resp. at 12, ECF No. 112. Means also emphasizes that Allweil has admitted that he did not contemporaneously document his billable hours from before 2014 and thus has estimated the time spent on this case during those years.

Kennard did seek discovery outside the administrative record, and Means filed a motion for a protective order to confirm that review was limited to the administrative record. *See* ECF No. 7. The Court concluded that discovery outside the administrative record was permitted in certain circumstances in ERISA cases, including where there is evidence of bias or procedural

irregularity in the denial of benefits. ECF No. 11 at 4. But the Court held that "Plaintiff's general allegations of procedural defects, without any factual support, are insufficient to establish the necessary predicate showing of an alleged procedural violation of Defendant in order to provide discovery on his ERISA claim." *Id.* at 8–9. The law regarding the scope of discovery in ERISA actions was well-settled at the time the suit was initiated and Allweil has provided nothing, besides generalized allegations, to suggest "that this action is unique." *Ousley v. Gen. Motors Ret. Program for Salaried Employees*, 496 F. Supp. 2d 845, 851 (S.D. Ohio 2006) (denying attorney fees for hours spent on discovery in an ERISA action). Upon review of Allweil's (estimated) time sheet, the Court concludes that he spent approximately 27 hours on his attempt to seek discovery outside the administrative record. *See* Time Sheet at 2–3, ECF No. 108, Ex. 3. The attempt to expand the record was not necessarily frivolous, despite its ultimate rejection, but the Court concludes that the argument was insufficiently supported to justify compensation for hours spent on the issue. Allweil's billed hours will be reduced by 27.

For similar reasons, Allweil will not be compensated for the hours billed while seeking a writ of mandamus from the Sixth Circuit. When "the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories," then "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). But "work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'" *Id.* (quoting *Davis v. County of Los Angeles*, 8 E.P.D. ¶ 9444, at 5049 (C.D. Cal.1974)). Here, Kennard's request for a writ of mandamus was rejected by the Sixth Circuit. ECF No. 84. This line of argument was unsuccessful and (more importantly) easily severable from the legal theories and claim on which Kennard did succeed. The Court calculates

the time spent on the mandamus issue at 44.75 hours. Allweil's billed hours will be reduced accordingly.

Means seeks further reduction based on Allweil's inclusion of what Means believes was unnecessary allegations in the pleadings. Allweil is seeking only 12 hours for drafting the complaint, which is not unreasonable, and Means has not identified how those extraneous allegations prejudiced it or otherwise expanded the litigation. Those allegations did feature in Allweil's attempt to expand the record, but the hours spent litigating that issue have already been excluded. Because there is no indication that these additions to the pleadings significantly increased the time Allweil billed, no reduction will be made on this basis.

Finally, Means argues that Allweil's billed hours should be reduced because Allweil has not kept contemporaneous records for hours billed before January 2014. And Allweil admits that is true. *See* Allweil Aff. at 2. Having reviewed Allweil's estimation of the hours billed before 2014, the Court finds them to be reasonable (and likely conservative) given the procedural history of the case. No further reduction will be made on this basis.

Accordingly, the reasonable number of hours spent on the case comes to 617.75 (Allweil's original estimate of 689.50 hours with 71.75 hours subtracted for the reasons provided above). When 617.75 is multiplied by $275, the initial lodestar calculation comes to $169,881.25.

**3.**

Next, the lodestar calculation "should be adjusted to reflect the 'result obtained.'" *Wayne*, 36 F.3d at 531 (quoting *Hensley*, 461 U.S. at 434). To determine if an adjustment is appropriate, two questions arise: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes

the hours reasonably expended a satisfactory basis for making a fee award?" *Hensley*, 461 U.S. at 434.

Here, Kennard achieved some success on the merits (as explained above), but that success was clearly qualified. After the first appeal, Kennard had achieved what appeared to be unqualified success. After remand, Means fully presented, for the first time, its argument that setoff against Kennard's worker's compensation benefits was appropriate. Means attempts to blame Kennard and Allweil for their "ill-advised decision" to continue litigating even after Means allegedly informed them that a setoff defense existed. But Means did not make that argument in its motion for judgment on the administrative record (except via a cursory mention in the reply brief). The protracted litigation, then, is more attributable to Means, not Kennard.

Admittedly, an award of attorney fees (especially a large award like Allweil is seeking) seems anomalous in a case where the Plaintiff ultimately received no monetary award. Means argues that, in this situation, no award should be given, but provides no legal support for that argument. Arguably, "the most critical factor [in determining the appropriate level of attorney fees] is the degree of success obtained." *Hensley*, 461 U.S. at 436. But *Hensley* involved a claim under 42 U.S.C. § 1988, which permits attorney fees only if the plaintiff is a "prevailing party." As discussed in section II, that is not the standard for the grant of attorney fees in ERISA cases. Given the modest level of success actually achieved, some reduction in fees is appropriate. But, for the reasons articulated in section II, an attorney fees award of some kind is warranted. The lodestar amount will be reduced by 25%, to $127,410.94.

**4.**

The final step is to consider twelve factors and determine whether any further reduction in the lodestar amount is necessary.

These factors are: (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Reed v. Rhodes*, 179 F.3d 453, 471–72 n.3 (6th Cir. 1999) (citing *Johnson*, 488 F.2d at 717–19).

Neither party argues that any of these factor support or undermine a further reduction. Given the significant reductions already imposed, the Court is disinclined to further reduce the fee award. Allweil zealously represented Mr. Kennard for a significant period of time. He did so skillfully and, despite the lack of a monetary award, succeeded in demonstrating that Kennard's disability claim was improperly denied by the Plan Administrator. Allweil's competent representation should be rewarded, if only to ensure that other ERISA plaintiffs will also have access to competent counsel. No further fee reduction will be imposed.

**B.**

The final question is whether Allweil is entitled to reimbursement for the costs he incurred during litigation. Allweil seeks $10,624.27 in costs. *See* Itemized Costs, ECF No. 108, Ex. 6. "As with attorney's fees, the Court has broad discretion to award costs to parties in ERISA action who have shown some degree of success on the merits." *Potter v. Blue Cross Blue Shield of Michigan*, 10 F. Supp. 3d 737, 753 (E.D. Mich. 2014). Means does not specifically challenge Allweil's request for costs. The costs which Allweil identifies all appear to be of the variety that "would normally be charged to the fee-paying client." *Id.* at 772. Having already determined that Allweil is entitled to reasonable attorney fees in this matter, there is no reason to deny him compensation for the reasonable litigation costs incurred. Allweil's itemization of the

costs is sufficiently detailed to allow review and the amount of compensation sought is reasonable. Accordingly, Allweil will be awarded costs in the amount of $10,624.27.

**IV.**

Accordingly, it is **ORDERED** that Plaintiff Kennard's Renewed Motion for Attorney Fees, ECF No. 108, is **GRANTED in part.**

It is further **ORDERED** that Defendant Means is **DIRECTED** to compensate Plaintiff Kennard **$138,035.21** for costs and fees incurred in litigating this matter.

Dated: August 1, 2017                              s/Thomas L. Ludington
                                                   THOMAS L. LUDINGTON
                                                   United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 1, 2017.

                    s/Kelly Winslow
                    KELLY WINSLOW, Case Manager